IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PLANNED PARENTHOOD OF KANSAS AND MID-MISSOURI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.:  11-cv-2357 JTM/DJW** |
| ) | |
| ) | |
| **ROBERT MOSER, MD, Secretary, Kansas Department of Health and Environment,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### SECOND AMENDED COMPLAINT

### NATURE OF THE ACTION

1.     This civil action is filed pursuant to 42 U.S.C. § 1983, to vindicate rights secured by the

Supremacy Clause and the First and Fourteenth Amendments to the United States Constitution.

For more than twenty-five years, Plaintiff Planned Parenthood of Kansas and Mid-Missouri

("Planned Parenthood" or "PPKM") has been an integral part of providing family planning

services to the men and women of Ellis and Sedgwick Counties through the federal family

planning program, known as "Title X."

2.     On May 28, 2011, Kansas Governor Sam Brownback signed into law a state

appropriations bill that includes an impermissible provision intended to prevent PPKM from

receiving Title X funds due to Planned Parenthood's provision of, association with, and/or

advocacy for access to abortion services.  H.B. 2014, 84th Leg. (Kan. 2011) (enacted).  Section

107(l) of the bill sets forth a pretextual funding restriction for the distribution of Title X monies, the sole purpose of which is to ensure that PPKM is excluded.

3.      On June 1, 2012, Kansas Governor Sam Brownback signed into law a subsequent state appropriations bill for fiscal year 2013.  H.B. 294, 85th Leg. (Kan. 2012) (enacted).  Section 82(k) of this bill includes a provision identical to Section 107(l).

4.      On June 15, 2013, Kansas Governor Sam Brownback signed into law a state appropriations bill for fiscal years 2014 and 2015.  S.B. 171, 86th Leg. (Kan. 2013) (enacted). Section 131(k) of this bill includes a provision identical to Section 107(1).

5.      Plaintiff seeks declaratory and injunctive relief because Section 107(l), Section 82(k), and Section 131(k) violate the Supremacy Clause and the First and Fourteenth Amendments of the United States Constitution.  They violate the Supremacy Clause by imposing restrictions on eligibility for Title X funds that are in excess of and inconsistent with restrictions and requirements established by the federal government for these funds.  Section 107(l), Section 82(k), and Section 131(k) violate the First and Fourteenth Amendments in that they constitute an impermissible penalty on Planned Parenthood's provision of, association with, and/or advocacy for access to abortion services, and thus also an unconstitutional burden on the rights of Plaintiff's patients to choose abortion.

6.      Section 107(l) was set to take effect on July 1, 2011, the start of the 2012 fiscal year. Section 82(k) was set to take effect on July 1, 2012, the start of the 2013 fiscal year.  Section 131(k) is set to take effect on July 1, 2013, the start of the 2014 fiscal year.  If they are allowed to stand, they will cause significant and irreparable harm to Plaintiff and Plaintiff's patients, including men and women seeking family planning services in Kansas.

## JURISDICTION AND VENUE

7.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.

8.      Plaintiff's claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

9.      Venue is proper under 28 U.S.C. § 1391(b) because the Defendant resides in this District.

<u>**THE PARTIES**</u>

10.     Plaintiff Planned Parenthood of Kansas and Mid-Missouri ("PPKM") is a not-for-profit Missouri corporation, headquartered in Overland Park, Kansas.  It has provided access to reproductive health care to women and families since 1935.  PPKM provides confidential health services to all individuals regardless of their ability to pay.  It currently has 9 health centers, including centers in the Kansas City metro area, Hays and Wichita, Kansas, and centers in Warrensburg and Columbia, Missouri.  PPKM has been a Title X service provider in Kansas for over twenty-five years.  Prior to July 1, 2011, its health centers in Wichita (Sedgwick County) and Hays (Ellis County), Kansas, each has received federal Title X funds subgranted to it by the Kansas Department of Health and Environment ("KDHE"), the Title X grantee for the state of Kansas.  Federal Title X funds are used to provide certain reproductive health services, including but not limited to pap smears and other cancer screenings, contraception counseling, pregnancy testing and related services, and screenings for HIV/AIDS and other sexually transmitted infections.  While PPKM performs abortions at two of its health centers in Missouri, abortions are not performed at any of its health centers in Kansas.  However, PPKM's affiliate organization, Comprehensive Health of Planned Parenthood of Kansas and Mid-Missouri ("Comprehensive Health"), does provide abortion services at its Overland Park, Kansas location.  Comprehensive Health does not receive any Title X funds, and all of its abortion services are financed entirely by private funds.

11.     Defendant Robert Moser, MD, is the Secretary of the Kansas Department of Health and Environment.  He is a government official responsible for the acts complained of in this litigation.  He is sued in his official capacity.

## TITLE X FAMILY PLANNING PROGRAM

12.     The Title X Family Planning Program ("Title X") is the federal program to subsidize the provision of family planning services to low-income persons.  42 U.S.C. § 300, *et seq*.  It was enacted in 1970 as part of the Public Health Service Act.  It was designed to ensure that low-income and/or uninsured families and individuals, including those not eligible for Medicaid coverage, would have access to family planning services.  Title X funds are granted by the United States Department of Health and Human Services ("HHS") to state agencies or private entities ("grantees").  Those grantees may provide services themselves or, as is the case in Kansas, enter into agreements with other entities ("subgrantees") to provide Title X services.

13.     Title X does not prohibit entities that provide abortion services from receiving Title X grants.  In fact, it contemplates that entities that provide abortions will receive Title X funds for family planning projects, and it requires that the subsidized project not include "abortion [as] a method of family planning."  42 U.S.C. § 300a-6.  Indeed, the Title X regulations state that "any entity" is eligible to apply for the funds, and make no mention of the ineligibility of entities that provide abortions to receive Title X funds or operate Title X projects.  *See* 42 C.F.R. § 59.1, *et seq*.  Nor do the Title X regulations impose any additional service requirements on entities applying for Title X funds, including that they be hospitals, federally qualified health centers ("FQHC's"), or provide any services outside of those offered as part of the Title X program.  Title X's rules and requirements apply not only to the Title X funds, but to all of the funds allocated to the project subsidized by the Title X funds.

4

14.     When passed in 1970, the clear intent of Title X was to fund low-cost family planning services provided by organizations like Planned Parenthood.  During the many years in which PPKM has received Title X funds, there have never been any allegations that PPKM failed to provide the services required under its agreements with KDHE.  Nor has PPKM ever misused Title X funds by allocating such funds for abortion services.

## KDHE'S FAMILY PLANNING PROGRAM AND ITS CURRENT TITLE X GRANT

15.     KDHE is the Title X grantee for the state of Kansas, and its Family Planning Services Program is funded, at least in part, by Title X grant monies received from the federal government.

16.     On February 22, 2010, KDHE submitted to HHS its competing continuation grant application for Title X funds for the Kansas Family Planning Services Program.  The grant application requested funds for the first year of a five-year project period, beginning June 30, 2010 and ending June 29, 2015.  In its application, as it had in prior years, KDHE explained how it intended to perform its proposed project and distribute its grant monies, and the number of patients who would be covered by the grant monies.  Its application included PPKM's Wichita and Hays health centers as two of its 58 subgrantees.  KDHE represented to HHS that PPKM was its largest subgrantee, shown in its grant application as receiving 13% of KDHE's total statewide Title X grant and serving more patients than any other subgrantee.  In addition to health services, KDHE represented to HHS that PPKM "has been implementing the FP [Family Planning] Program Male Involvement Information and Education Project focusing on African-American and Hispanic young men ages 12-19 and addressing the Title X program priority to more fully involve males in reproductive health, as well as the Healthy People 2010 FP goal to: 'improve pregnancy planning and spacing and prevent unintended pregnancy.'"

17.    On information and belief, KDHE's 2010 grant application was accepted by the federal government for the time period June 30, 2010 to June 29, 2015.

18.    KDHE enters into contracts with PPKM and other family planning providers on an annual basis for contract periods that run from July 1 through June 30 to provide the clinical health services described in KDHE's Title X grant.  For the 2011 fiscal year, KDHE granted Plaintiff $284,433.00 to serve 4,270 individuals in Sedgwick County at its Wichita health center. KDHE also granted Plaintiff $46,869.00 to serve 897 individuals in Ellis County at its Hays health center.  Plaintiff's contracts with KDHE expired on June 30, 2011.

## THE KANSAS STATE BUDGET PROCESS
## AND ITS DEFUNDING OF PLANNED PARENTHOOD

19.    The Kansas annual budget, which runs from July 1 to June 30, in addition to state monies, includes KDHE's federal Title X grant monies.

20.    For the fiscal year beginning July 1, 2011, all of the federal Title X funds were appropriated in Section 107(l) of the appropriations bill, H.B. 2014, which states:

> (l) During the fiscal year ending June 30, 2012, subject to any applicable requirements of federal statutes, rules, regulations or guidelines, any expenditures or grants of money by the department of health and environment—division of health for family planning services financed in whole or in part from federal title X moneys shall be made subject to the following two priorities: First priority to public entities (state, county, local health departments and health clinics) and, if any moneys remain, then, Second priority to non-public entities which are hospitals or federally qualified health centers that provide comprehensive primary and preventative care in addition to family planning services: *Provided,* That, as used in this subsection ''hospitals'' shall have the same meaning as defined in K.S.A. 65-425, and amendments thereto, and ''federally qualified health center'' shall have the same meaning as defined in K.S.A. 65-1669, and amendments thereto.

21.    Under K.S.A. 65-1669(e), a FQHC is a primary health center that both meets the requirements for federal funding under 42 U.S.C. § 1396d(l) of the Public Health Service Act

("Section 1396d(l)"), *and* which has been designated as a FQHC by the federal government.

Section 1396d(l) is part of Title XIX, the Medicaid program.  Under 42 U.S.C. § 1396d(l), to

qualify as an FQHC, an entity must receive a grant (or contract with a grantee) *and* meet the

requirements to receive a grant under Section 254b of the Public Health Service Act, which

provides Medicaid funds for primary health services to underserved populations.  42 U.S.C.

§ 1396d(l).  Section 254b grant recipients are "health centers" that must provide a range of

"required primary health services," including general preventative dental care, vision screenings,

and "pediatric eye, ear, and dental screenings to determine the need for vision and hearing

correction and dental care," among others.  42 U.S.C. §§ 254b(b)(1)(A)(i)-(v).  In addition, the

U.S. Secretary of Health and Human Services must determine that the entity meets the federal

requirements for a section 254b grant, or has been treated by the Secretary as a fully federally

funded health center as of January 1, 1990, to officially be an FQHC.  *Id.* §§ 1396d(l)(2)(B)(iii)-

(iv).

22.     PPKM is not a hospital or a FQHC under 42 U.S.C. § 1396d(l).  Although it provides a

broad range of health services, PPKM specializes in the provision of family planning and

reproductive health services; it does not provide all of the primary health services required to be

a FQHC.

23.     Under Section 107(l), "non-public entities which are hospitals or federally qualified

health centers that provide comprehensive primary and preventative care in addition to family

planning services" are eligible for federal Title X funds.  Section 107(l) thereby prohibits KDHE

from distributing federal Title X Family Planning Program funds to any organization *specializing*

in women's health or family planning, including Planned Parenthood, that does not also provide

comprehensive primary and preventative care.  In addition, by requiring PPKM to have been

7

designated a FQHC by the federal government, KDHE is imposing an unrelated federal administrative requirement on the receipt of Title X monies.  These Section 107(l) requirements are inconsistent with the intent of Title X and impose restrictions on eligibility for these funds that are in excess of and inconsistent with the restrictions and requirements established by the federal government for Title X funds.

24.     It is also inconsistent with the intent of Title X and improper to exclude abortion providers or those associated or affiliated with them from participating in the program.  The history of Section 107(l) demonstrates that this "priority" funding provision had precisely this improper motivation – *i.e.,* to remove Planned Parenthood from the Title X program and penalize it because it provides or is associated or affiliated with abortion services.

25.     The Kansas Appropriations Bill for fiscal year 2012 was introduced in the Kansas House of Representatives on Friday January 14, 2011 and titled H.B. 2014.  It did not contain any restrictions on who may receive Title X funds.

26.     On February 8, 2011, Representative Lance Kinzer offered an amendment to Section 57 of the bill imposing the same restrictions on Title X funding for fiscal year 2011 that are now found at Section 107(l) for fiscal year 2012.  Rep. Kinzer's amendment was adopted by the Kansas House on that same day.  After the vote on his amendment, Rep. Kinzer issued a press release, posted on his personal website, www.lancekinzer.com.  This press release summarized the events of the day, February 8, and stated that an "amendment, offered by Representative Kinzer and approved by ninety-one members, took all state funding away from Planned Parenthood to ensure that state dollars are not used for abortion services."

27.     Also on February 8, 2011, substantially the same release was circulated by Speaker of the Kansas House, Representative Mike O'Neal's Communications Director, Christie Kriegshauser.

Rep. Kinzer also posted the following online:  "Delighted to announce that the KS House just approved my floor amendment to deny Title X funding to Planned Parenthood for the balance of FY2011.  The vote was 91-26, a great victory on the first pro-life floor vote of the session."

28.     On April 25, 2011, LifeSiteNews.com, which claims that it is a non-profit internet news service, published a story titled, "Kansas Governor Brownback: Zap Planned Parenthood Funding."  The article summarized the effects of Rep. Kinzer's amendment on Planned Parenthood funding and quotes Governor Sam Brownback's spokeswoman, Sherriene Jones-Sontag as stating, "Gov. Brownback . . . opposes taxpayer subsidy of abortions."

29.     When the Appropriations Bill came out of the Conference Committee on May 12, 2011, the Committee Report included substantially similar language to that of Rep. Kinzer's February 8 amendment in Section 107(l).  The Kansas State Senate and Kansas State House voted to adopt the Conference Committee Report on May 12, and May 13, respectively.  Also on May 13, the Lawrence Journal-World, LJWorld.com, published an article on its website titled, "Planned Parenthood criticizes Kansas budget provision."  The article describes Governor Brownback as having "hailed" Rep. Kinzer's amendment, and quotes Governor Brownback as stating that by passing this measure, Kansas would "zero out funding of Planned Parenthood."  Kansans for Life also issued a May 13 Press Release stating that "Planned Parenthood will no longer" receive Title X funds.

30.     The final bill was presented to Governor Brownback on Friday May 20, 2011.  The Governor signed the bill into law on May 28, 2011.

31.     On or about June 14, 2011, Defendant sent letters to PPKM informing it that its Wichita and Hays health centers would not receive Title X funds for the 2012 fiscal year and that Plaintiff's Universal Contract with KDHE was thereby cancelled.  The letters, on letterhead

reflecting the names of Governor Brownback and Defendant Secretary Moser and signed by Defendant Secretary Moser, stated that KDHE was "unable" to provide "Title X family planning funding . . . during state fiscal year 2012" because "[d]ue to recent legislative action funding is no longer available for your organization."

32.    On June 1, 2012, Governor Brownback signed into law a subsequent state appropriations bill for fiscal year 2013.  H.B. 294, 85th Leg. (Kan. 2012) (enacted).  Section 82(k) of this bill includes a provision identical to Section 107(l).

33.    On June 15, 2013, Kansas Governor Sam Brownback signed into law a state appropriations bill for fiscal years 2014 and 2015.  S.B. 171, 86th Leg. (Kan. 2013) (enacted).  Section 131(k) of this bill includes a provision identical to Section 107(1).

## THE IMPACT OF SECTIONS 107(l),82(k), and 131(k) ON PLAINTIFF AND ITS PATIENTS

34.    It is clear from the statements of Governor Brownback and legislators like Rep. Kinzer that the specific intent of Section 107(l) was to prohibit the distribution of Title X funds to Planned Parenthood because of their belief that Planned Parenthood performs, is associated with, and/or advocates for access to abortion.  Sections 107(l), 82(k) and 131(k) effectively strip more than $330,000.00 in historical annual funding from PPKM.

35.    PPKM's patients, as well as other women and men in Kansas, will be injured by the loss of these funds.  PPKM will have to make substantial cuts in family planning services, charge significantly more for its services, and possibly close one or more of its health centers.  The monies that will be lost fund critical medical services for men and women, including family planning and contraception, pregnancy testing, HIV/AIDS testing, treatment of sexually transmitted infections, detection of cervical, breast and testicular cancers, and vaccinations for hepatitis and cervical cancer.  They have never been used to perform abortions.

36.     The low-cost family planning and reproductive health services that PPKM provides are

particularly important because so many of PPKM's patients have limited financial means.

37.     The PPKM Center in Wichita provides services to approximately 4,700 different women,

men and teens each year who come from southeast and south central Kansas.  The PPKM health

center in Hays provides services to more than 1,000 different women, men and teens each year

who come from a large area of western Kansas.  PPKM provides thousands of pap tests and

breast exams, more than 8,700 birth control visits and more than 15,000 STD tests each year to

these more than 5,700 individuals.  This does not include other individuals to whom PPKM

provides education services through the Title X program.

38.     PPKM is not aware of any other organizations with the capacity, facilities, or staffing to

adequately serve its patients at the Wichita and Hays health centers who will now need to find a

new health service provider.  In order to take advantage of Title X's sliding fee scale, Plaintiff's

patients will be forced to end their established relationships with PPKM and seek services

elsewhere.  In some cases, patients will be forced to travel further to seek treatment or

medications, wait longer for appointments, delay testing and other procedures, or otherwise

receive care that is not of the same quality that PPKM provides.

39.     In fact, PPKM believes that, as of July 1, 2011, there will be no family planning

providers in Ellis County receiving Title X funds, and individuals who rely on PPKM's services

there may be forced to travel long distances for health care.  In addition, a substantial number of

patients may face a total loss of services, or be forced to pay substantially greater fees for family

planning services.

40.     The loss of Title X funds will also cause PPKM to lose its eligibility to participate in the

340B drug pricing program.  PPKM is eligible for this program owing to its status as a Title X

service provider.  This program enables PPKM to purchase outpatient drugs at a lower cost than it otherwise could.  Without the 340B drug pricing program, PPKM will lose additional monetary benefits that go directly toward helping it provide family planning services to low-income women and men in Kansas.

41.      PPKM expects that, without Title X funds and 340B pricing, it will only be able to continue its current sliding fee scale for one or two months.  Ultimately, without the Title X funding that PPKM historically has received and without 340B drug pricing, PPKM will have no choice but to charge patients significantly more for family planning services and may have to reduce the services it provides.  PPKM may even be forced to close one or more of its health centers.

42.      Because Section 131(k) is identical to Section 107(l), it will have the same effects on PPKM and its patients.

43.      Plaintiff has no adequate remedy at law.

## CLAIMS FOR RELIEF

## COUNT I - SUPREMACY CLAUSE

44.      Plaintiff hereby reaffirms and realleges each and every allegation made in ¶¶1-43 above as if set forth fully herein.

45.      Sections 107(l), 82(k), and 131(k) violate the Supremacy Clause of the United States Constitution by placing impermissible eligibility conditions on federal funds that are in excess of and inconsistent with those established by the federal government.

## COUNT II - UNCONSTITUTIONAL PENALTY ON CONSTITUTIONALLY PROTECTED ACTIVITY – First Amendment

46.      Plaintiff hereby reaffirms and realleges each and every allegation made in ¶¶1-45 above as if set forth fully herein.

47.     Sections 107(l),82(k), and 131(k) violate the rights of Plaintiff as guaranteed by the First Amendment to the United States Constitution by imposing a penalty on its association with providers of abortion services and/or its advocacy for access to abortion services.

### COUNT III - UNCONSTITUTIONAL PENALTY ON CONSTITUTIONALLY PROTECTED ACTIVITY – Fourteenth Amendment

48.     Plaintiff hereby reaffirms and realleges each and every allegation made in ¶¶1-47 above as if set forth fully herein.

49.     Sections 107(l), 82(k), and 131(k) violate the rights of Plaintiff and Plaintiff's patients as guaranteed by the Fourteenth Amendment to the United States Constitution by imposing a penalty on the provision of, or association or affiliation with, abortion services, and thereby imposing an unconstitutional burden on the rights of women to choose abortion.

WHEREFORE, Plaintiff requests that this Court:

1. Issue a declaratory judgment that Section 107(l) of Senate Substitute for House Bill 2014, Section 82(k) of House Substitute for Senate Bill No. 294, and Section 131(k) of Senate Bill No. 171violate the Supremacy Clause of the United States Constitution and is therefore void and of no effect;

2. Issue a declaratory judgment that Section 107(l) of Senate Substitute for House Bill 2014, Section 82(k) of House Substitute for Senate Bill No. 294, and Section 131(k) of Senate Bill No. 171 violate the rights of Plaintiff protected by the First Amendment to the United States Constitution;

3. Issue a declaratory judgment that Section 107(l) of Senate Substitute for House Bill 2014, Section 82(k) of House Substitute for Senate Bill No. 294, and Section 131(k) of Senate Bill No. 171 violate the rights of Plaintiff and Plaintiff's patients protected by the Fourteenth Amendment to the United States Constitution;

4. Issue preliminary and permanent injunctive relief, without bond, restraining the enforcement, operation, and execution of Section 107(l) of Senate Substitute for House Bill 2014, Section 82(k) of House Substitute for Senate Bill No. 294, and Section 131(k) of Senate Bill No. 171 by enjoining Defendant, his agents, employees, appointees, or successors from enforcing, threatening to enforce, or otherwise applying the provisions of Section 107(l),Section 82(k) and Section 131(k);

5. Grant Plaintiff attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

6. Grant such further relief as this Court deems just and proper.

Dated:  June 21, 2013

Respectfully submitted,

s/ Lee Thompson
Lee Thompson, #08361
Erin C. Thompson, #22117
THOMPSON LAW FIRM, LLC
106 E. 2nd Street
Wichita, Kansas  67202
Telephone:  (316) 267-3933
Fax:  (316) 267-3901
E-mail:  lthompson@tslawfirm.com

Elissa Preheim (*admitted pro hac vice*)
Sarah E. Warlick (*admitted pro hac vice*)
Arnold & Porter LLP
555 Twelfth St., NW
Washington, DC  20004
(202) 942-5000

Roger K. Evans (*admitted pro hac vice*)
Planned Parenthood Federation of America
434 W. 33rd Street
New York, NY  10001
(212) 541-7800

Helene T. Krasnoff (*admitted pro hac vice*)
Planned Parenthood Federation of America
1110 Vermont Avenue NW, Suite 300
Washington, DC  20005
(202) 973-4800

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notice of electronic filing to:

James M. Armstrong                              jarmstrong@foulston.com
Gary L. Ayers                                   gayers@foulston.com
Foulston Siefkin LLP
1551 N. Waterfront Parkway
Suite 100
Wichita, KS  67206-4466


Toby Crouse                                     tcrouse@foulston.com
Foulston Siefkin LLP
32 Corporate Woods
Suite 600
9225 Indian Creek Parkway
Overland Park, KS  66210-2000


Jeffrey A. Chanay, Deputy Attorney General      Jeff.Chanay@ksag.org
Steve R. Fabert, Assistant Attorney General     Steve.Fabert@ksag.org
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS  66612-1597

*Attorneys for Defendant*